FILED

2005 Sep-27  PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| YOUR LORD MY MAJESTY ALLAH | ) | |
| also known as ALVIN PIERRE PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:00-cv-00697-VEH-TMP |
| | ) | |
| WARDEN DEES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Your Lord My Majesty Allah, also known as Alvin Phillips, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at St. Clair Correctional Facility in Springville, Alabama.  The complaint was filed on March 16, 2000.  Plaintiff names as defendants Warden Steve Dees, Warden Garrett, Lieutenant Hicks, Lieutenant Headley, Sergeant Malone, Sergeant Howard, Sergeant Pickett, Sergeant Sanderson, Correctional Officer Gladdins, Correctional Officer Henderson, Correctional Officer Blevins, Correctional Officer Perry, Correctional Officer McGant, Correctional Officer Pierce, Correctional Officer Edwards, Correctional Officer Bailey, and Classification Specialist K. Thompson.  Plaintiff seeks injunctive relief and damages.

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief.  While the former 28 U.S.C. § 1915(d) permitted the court to dismiss claims *sua sponte* only if the court found them frivolous or malicious, the new Section 1915A directs the court, in effect, to make and rule on its own motion to dismiss the complaint prior to service.  In order to protect a *pro se* prisoner's right of access to the courts, however, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

Plaintiff has raised at least forty-one (41) claims in his lengthy complaint, most of which are unrelated.  The court will attempt to address these claims serially, but it has re-arranged them chronologically to make them follow a more logical sequence.

1. Disciplinary Segregation on May 26, 1999

Plaintiff claims that on May 26, 1999, pursuant to orders given by defendant Pickett, he was placed in segregation for an alleged threat made by him against Ms. Reflesia Mostella.  He states that defendant Pickett did so because he was offended by plaintiff's exercising his freedom of speech. Plaintiff alleges that defendant Pickett asked him why he had threatened Ms. Mostella and then stated that plaintiff had done so because she is a woman.  Plaintiff claims further that on June 3, 1999, defendant Pickett served as the hearing officer on the disciplinary charging him with making threats to Ms. Mostella, in spite of the fact that Administrative Regulation 403 states that personnel who have formed an opinion of the innocence or guilt of the charged inmate, may not serve as hearing officer.

With respect to plaintiff's claim that defendant Pickett had him placed in segregation to await a disciplinary charge for allegedly threatening Ms. Mostella, plaintiff's claim is due to be dismissed. As previously noted, the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct.2293, 132 L. Ed. 2d 418(1995), changed the landscape in the analysis of this type of case. Dealing with a case in which a prisoner in Hawaii sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for 30 days, the court concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration. As such, segregation did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause. Unlike the loss of good-time credits at issue in *Wolff v. McDonnell*, 418 U.S. 539 (1974), mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that ordinarily is not a major change in his living conditions. In concluding that placement in disciplinary segregation does not implicate due process, the Court held:

> We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Id.*, at 2302.

With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor

is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

Plaintiff does not allege that he lost good-time credits already earned or accrued. While before *Sandin,* plaintiff's assertion would have sufficiently stated a due process claim under § 1983, *see ,e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does so. There is no right to due process before a prisoner is confined to segregation. Therefore, because there is no right to procedural due process of law before the imposition of disciplinary segregation, plaintiff's claim that his due process rights were violated when defendant Pickett had him placed in segregation after deciding that plaintiff had threatened Ms. Mostella because she is a woman is not actionable under the Fourteenth Amendment or § 1983. Plaintiff's claim is due to be dismissed.

Plaintiff also alleges that on May 26, 1999, as a result of defendant Pickett's order to place him in segregation, he was taken to K-Block where he remained with his hands cuffed  behind his back for several hours. He does not allege who escorted him to K-Block or who left the handcuffs on him for so long. Plaintiff claims that eventually he was taken to the shift office by defendant Pierce who recklessly searched through his property. When plaintiff asked defendant Pierce to be careful, he was cursed by Pierce. Plaintiff claims that defendant Malone was present and watching, and that he instructed defendant Pierce not give plaintiff any of his property to take to segregation

with him.  Upon arrival at his cell, plaintiff was not given any property and was placed on stripped cell status.

Plaintiff's claim that he remained handcuffed for several hours while waiting to be placed in segregation is due to be dismissed.  Insofar as plaintiff asserts an Eighth Amendment claim for cruel and unusual punishment, his treatment fails to meet the requirement that it be objectively cruel.  In order to establish that jail conditions violate the Eighth Amendment, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 502 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994).  Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry, while whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 502 U.S. at 290.

Here, being handcuffed behind the back for several hours was not objectively harsh or cruel, at least not to the extent of implicating the Eighth Amendment.  By comparison, the Eleventh Circuit Court of Appeals has rejected claims involving the restraint of prisoners for much longer periods of time and under more uncomfortable conditions. *See Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994) (inmate wearing only undershorts placed in stripped cell for 29 hours not objectively harsh enough to implicate Eighth Amendment); *Williams v. Burton*, 943 F.2d 1572 (11th Cir. 1991) (inmate in four-point restraint and gagged for 28 ½ hours not a violation of the Eighth Amendment).  Plaintiff was being held pending placement in disciplinary segregation. He does not allege that he suffered any

5

undue pain or injury due to the experience.  The factual circumstances of his being held in handcuffs for "several hours" pending transfer to disciplinary segregation do not rise to the level of being cruel and unusual punishment.

Plaintiff complains also that defendant Pierce searched his property "recklessly."  He does not allege that any of his property was broken or damaged, and, thus, has failed to state how defendant Pierce's search of his property violated his constitutional rights.  This claim is due to be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's allegation that defendant Pierce cursed him also is due to be dismissed.  It is well established that verbal harassment, words, and threats are not actionable as constitutional violations. *Robertson v. Plano City of Texas,* 70 F.3d 21, 25 (5th Cir. 1995); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *cert. denied,* 502 U.S. 879 (1991); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998 (1983); *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979); *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1553 (N.D. Fla. 1995); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982).

Plaintiff further claims that defendant Malone instructed defendant Pierce not to give plaintiff any of his property and, as a result, plaintiff was placed in a stripped cell. While this claim may appear to be a traditional "conditions of confinement" theory, it actually must be analyzed under the excessive-force model because the stripping of the cell constitutes a use of passive force to restore order and discipline.  Even though no "active" force against the prisoner was involved in this case, the removal of property, bedding, and clothing from the cell was intended to compel his compliance

6

with prison rules.  Thus, in that sense, it was a very real use of force coming under the excessive force model for analysis under the Eighth Amendment.

In *Sims v. Mashburn,* 25 F.3d 980 (11th Cir, 1994), a prisoner was confined in a stripped cell for 29 hours, with no bedding and clothed only in undershorts.  The Court of Appeals expressed "serious doubt about whether harm of this kind is objectively harmful enough to establish an Eighth Amendment violation."  Relying on its decision in *Williams v. Burton,* 943 F.2d 1572 (11th Cir. 1991), the Court of Appeals emphasized that prison officials must be given due deference with regard to decisions concerning measures necessary to maintain order within the institution.  In the context of the use of stripped cells to control inmates and the length of time inmates should be confined in a stripped cell, due deference requires the court to consider "the good faith of the officers in exercising [their] judgment . . ." in deciding when to terminate the stripped confinement. *Sims* at 985 (*quoting Ort v. White,* 813 F.2d 318 (11th Cir. 1987).  When to end an inmate's stripped cell status generally "boils down to a subjective judgment" relating to when the inmate has demonstrated sufficiently stable behavior to warrant returning the prisoner's property, bedding, and clothing.

Plaintiff has offered the court nothing to support his contention that the defendants' actions were calculated to cause him the degree of harm that would be considered cruel and unusual punishment.  Thus, by respecting the wide-ranging deference due to prison administrators in the exercise of judgment in handling the problems of the institution, the court must conclude that placement of plaintiff in a stripped cell was not the product of a malicious or sadistic motive, but a good faith desire to restore order and discipline to the institution.  Thus, plaintiff's claim is meritless and due to be dismissed.

2.  <u>Claims Arising on May 27, 1999</u>

Plaintiff alleges further that on May 27, 1999, defendant Blevins read his legal mail, threw his property on the floor, and used a racial slur when referring to him.  Specifically, plaintiff states that the day after he was placed in segregation, he was escorted to the segregation property room where his personal property was scattered over the floor in a "semi-pile." He claims that defendant Blevins began the inventory of plaintiff's property by throwing his Nike gym shoes in the garbage, saying, "You have a pair of boots on."  Plaintiff alleges further that defendant Blevins then looked through and read some of his legal papers, and upon seeing a court order regarding plaintiff's name change, he held it up saying, "You one of them black powers Negroes."  The plaintiff replied, "I am a Black God, and you are a white devil."

Plaintiff's claim that defendant Blevins read his legal mail and legal papers is due to be dismissed.  Plaintiff does not allege that his right to access the courts was in any way violated by defendant Blevins simply reading his legal materials.  The mere reading of legal materials does not, standing alone, constitute a violation of the plaintiff's right of access to the courts.  There is no allegation that the reading violated any attorney-client privileged communication.  Accordingly, plaintiff's claim that defendant Blevins read his legal mail and legal papers should be dismissed for failure to state a claim.

Plaintiff's claims regarding his property are also due to be dismissed.  Plaintiff has failed to show how the mere fact that his property was thrown on the floor violates any of his constitutional rights.  In addition, plaintiff's claim that his Nike gym shoes where thrown in the garbage also fails.  In *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court held that although the unintentional loss of a prisoner's personal property was a deprivation of property within the meaning

of the Due Process Clause of the Fourteenth Amendment, the plaintiff was not deprived of property within due process where the State's postdeprivation tort remedy provided the process that was due. In the companion cases of *Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986), the United States Supreme Court reconsidered the holding in *Parratt*, *supra*, that "the alleged loss, even though negligently caused, amounted to a deprivation." The Court in *Daniels*, *supra*, overruled *Parratt* to the extent that it held that mere lack of due care by a state official may deprive a person of life, liberty or property and held that "the due process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, *supra*. Moreover, in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme Court stated:

> We hold that an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.

The court concludes that the plaintiff was not deprived of property without due process of law. Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the state or its agents. The defendant was an agent of the State of Alabama, therefore, plaintiff has a remedy under the state statute. Should the Board of Adjustment deny the claim, plaintiff may then bring an action in the courts of the state of Alabama for redress. See *Carmichael v. State Board of Adjustment*, 249 Ala. 542, 32 So.2d 216 (1947). Therefore regardless of whether the alleged deprivation was unintentional or intentional, plaintiff has not been deprived of property without due process of law because he has a legal means whereby he can be heard on this claim for compensation.

Plaintiff's claim that defendant Blevins stated "You one of them black powers Negroes" is also due to be dismissed. Even if this statement can be regarded as threatening or demeaning, words, threats and harassment are simply not actionable as violations of the Constitution. *Jones v. Superintendent*, 370 F.Supp. 488, 491 (W.D.Va. 1974), *citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973). *See also Stacey v. Ford*, 554 F.Supp. 8 (N.D.Ga. 1982).

3. <u>Claims Arising on May 30, 1999</u>

Plaintiff next claims that on May 30, 1999, defendant Gladdins called him "nigger," and then conspired to have bodily harm done to him at the hands of another inmate. He alleges that, while in disciplinary segregation, he attempted for twenty minutes to get defendant Gladdins attention in order to have him notify the infirmary that plaintiff had blurred vision. He states that when defendant Gladdins finally came to the cubicle window and plaintiff told him about his medical problem, defendant Gladdins stated, "quit jacking off so much." Plaintiff claims that he told defendant Gladdins that it was not a joking matter, and that defendant Gladdins then repeatedly yelled for an inmate named Richard, who was a cell cleaner. Plaintiff asserts that defendant Gladdins stated to Richard, "Hey Richard, scowl that nigger in 13 cell when you come out. I'll pay you."

Plaintiff claims that defendant Gladdins used a racial slur when speaking to him. It is well established that verbal harassment or abuse does not state a constitutional violation. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). As previously noted, words, threats and harassment are simply not actionable as violations of the Constitution. *Jones v. Superintendent*, 370 F.Supp. 488, 491 (W.D.Va. 1974), *citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied*, 414 U.S.

1033 (1973).  *See also Stacey v. Ford*, 554 F.Supp. 8 (N.D.Ga. 1982).  The complaint is due to be dismissed with respect to this issue.

Likewise, plaintiff's claim that defendant Gladdins attempted to have him assaulted by another inmate is due to be dismissed.  Plaintiff was not harmed in any way, and there is no allegation of an actual conspiratorial agreement to harm the plaintiff.  Therefore, plaintiff's claim is due to be dismissed for failure to state a claim upon which relief may be granted.


4.  Claims Arising on June 3 through 30, 1999

Plaintiff alleges that on June 3, 1999, defendant Pickett served as the hearing officer on the disciplinary charging him with making threats to Ms. Mostella, despite the fact that Administrative Regulation 403 states that personnel who have formed an opinion of the innocence or guilt of the charged inmate, may not serve as hearing officer, this claim is also due to be dismissed.  Plaintiff claims that defendant Pickett asked him why he had threatened Ms. Mostella and then stated that plaintiff had done so because she is a woman.  The mere fact that agency regulations have been violated does not by itself raise a constitutional issue.  *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*,  683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).  Further, the possible fact that Pickett had an opinion before serving on the disciplinary hearing does not mean that due process was violated in the prison disciplinary context.  There is no allegation that Pickett had first-hand knowledge of the incident underlying the disciplinary.

Plaintiff next claims that on June 23, 1999, defendant Howard told the segregation review board that defendant Hicks had told him that plaintiff was terminated from the work squad because

he was "masturbating off of Ms. Mostella." He states further that on June 30, 1999, defendant Hicks stated before the segregation review board meeting that he would arrange for disciplinary action to be brought against plaintiff for indecent exposure when plaintiff asked why he had not been charged if most of the segregation officials knew he had committed the offense. Plaintiff claims that defendants Howard and Hicks were relying on false information that had been provided by their personal snitch, who was a segregation runner. He claims that Howard's and Hicks' remarks kept him from receiving an earlier release from disciplinary segregation.

As noted above, with the Supreme Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

Plaintiff contends further that there is a "get-tough unwritten policy" in effect at the prison regarding violations of Rule 38, Indecent Exposure, while correctional officers do nothing about inmates participating in homosexual acts. Plaintiff's generalized claim of prejudice or discrimination does not state a claim in violation of the equal protection clause of the Constitution. In *Oyler v.*

*Boles*, 368 U.S. 448, 456 (1962), the United States Supreme Court indicated that to show a constitutional violation there must be a showing of selection deliberately "based upon an unjustifiable standard such as race, religion or other arbitrary classification." The mere allegation that there is a get tough policy against inmates charged with indecent exposure while correctional officers do nothing to inmates participating in homosexual acts does not show any deliberate action against plaintiff by defendants based upon an unjustifiable standard. Plaintiff's claims against defendants Howard and Hicks are due to be dismissed.

5. <u>Claims Arising June 8 and 9, 1999</u>

Plaintiff claims that on June 8, 1999, defendant Perry threatened him and that on June 9, 1999, defendant Perry attempted to assault him. He claims specifically that on June 8, 1999, defendant Perry caught him masturbating. Plaintiff claims that although he stopped when he saw defendant Perry, defendant Perry continued to look at him and told plaintiff, "I'm gone get you," before he left. Plaintiff avers that on June 9, 1999, defendant Perry came to his cell after all of the other inmates housed within his unit had been escorted to the Segregation Board meeting. Plaintiff contends that it was clear to him that he was being set up to be handcuffed, leg shackled, and attacked. He states that after several attempts to deceive him by stating that they could go into the office to talk, defendant Perry stated to plaintiff that he was lucky he did not come out, because he was going to beat plaintiff. Plaintiff claims that defendant Perry returned to his cell later that day and threatened him stating, "Soon you aint (sic) gonna be able to eat when I bring your tray."

Both of plaintiff's claims are due to be dismissed. It is well established that verbal harassment, words, and threats are not actionable as constitutional violations. *Robertson v. Plano*

*City of Texas,* 70 F.3d 21, 25 (5th Cir. 1995); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *cert. denied,* 502 U.S. 879 (1991); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998 (1983); *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979); *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1553 (N.D. Fla. 1995); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982). Clearly, plaintiff's claim that defendant Perry "attempted to assault [him]" is due to be dismissed. Plaintiff was not harmed in any way. Therefore, he has failed to state a claim upon which relief may be granted.

Plaintiff claims further that although he complained to the wardens about defendant Perry's behavior, his complaints were not answered. He also claims that after his mother called Warden Garrett, defendant Perry immediately ceased harassing him and attempting to cause him bodily harm. This claim is due to be dismissed. Plaintiff was not harmed by defendant Perry and, as stated by plaintiff in his complaint, defendant Perry ceased harassing him and allegedly attempting to cause him bodily harm. This claim is due to be dismissed for failure to state a claim upon which relief may be granted.

6. Claim Involving August 1999 Disciplinaries

Plaintiff next alleges that on August 5, 1999, he was placed in segregation for allegedly violating Rules 56 and 62. He states that on August 10, 1999, he received an Extension of Investigation which, he claims, violated the 72 hour due process standard afforded within Administrative Regulation 403. He claims further that on August 11, 1999, he received

disciplinaries for the rule violations and that on August 12, 1999, he was sentenced to 36 days disciplinary and restriction.  Plaintiff claims that on August 13, 1999, defendant Garrett approved the recommended punishment in blatant disregard of the 72 hour due process standard set forth in Administrative Regulation 403. As previously stated, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue.  *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*,  683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).  Plaintiff's claims are due to be dismissed.

### 7.  Claims Involving September 27, 1999 Disciplinary

Plaintiff's next asserts that on October 6, 1999, defendant Pickett chaired a disciplinary hearing in which plaintiff was charged with violating Rule 56, Failure to Obey a Direct Order, made by defendant Edwards on September 27, 1999.  Plaintiff claims that defendant Pickett found him guilty based upon the fact that he did not present evidence to refute the charge, but plaintiff alleges that defendant Pickett failed to determine whether defendant Edwards had terminated plaintiff from class on September 17, 1999, a full ten days before the disciplinary charge was made.  Plaintiff contends that a determination in the affirmative would have resulted in a finding of innocence. Plaintiff argues that although defendant Edwards charged him with violating Rule 56 on September 27, 1999, he had terminated plaintiff from class ten days earlier, and plaintiff argues that Administrative Regulation 403 states that disciplinary action must be taken within ten calendar days of a rule violation.

On these facts plaintiff contends that defendant Pickett violated his due process rights when he found plaintiff guilty of violating Rule 56 based upon the fact that plaintiff did not present evidence to refute the charge. As previously noted, the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct.2293, 132 L. Ed. 2d 418(1995) changed the landscape in the analysis of this type of case. With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

Plaintiff does not allege that he lost good-time credits already earned or accrued. While before *Sandin* plaintiff's assertion would have sufficiently stated a due process claim under § 1983, *see ,e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does so. There is no right to due process before a prisoner is confined to segregation.

Therefore, because there is no right to procedural due process of law before the imposition of disciplinary segregation, the fact that plaintiff was found guilty of violating Rule 56 because he

did not present any evidence to refute the charge is not actionable under the Fourteenth Amendment or § 1983. Plaintiff's claim is due to be dismissed.

In addition, plaintiff's claim that defendant Edwards failed to comply with Administrative Regulation 403 when he charged plaintiff with violating Rule 56 on September 27, 1999, is also due to be dismissed.  Plaintiff contends that Administrative Regulation 403 states that disciplinary action must be taken within ten calendar days of a rule violation. He contends that the disciplinary was brought outside of the ten day time limit. However, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue.  *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*,  683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).  This claim is due to be dismissed.


8.  <u>Claims Relating to Officer Bailey</u>

Plaintiff's next claim is that on August 18, 1999, defendant Bailey entered his cell to retrieve law books while plaintiff was on work detail. He states that when he returned to his cell, he discovered the following items missing: an ink pen, a leather religious medallion, religious and political essays which he had written, and legal bulletins.  As previously noted, in *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court held that, although the unintentional loss of a prisoner's personal property was a deprivation of property within the meaning of the Due Process Clause of the Fourteenth Amendment, the plaintiff was not deprived of property without due process where the State's postdeprivation tort remedy provided the process that was due.  In the companion cases of *Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986), the United States Supreme Court reconsidered the holding in *Parratt*, *supra*, that "the alleged loss,

17

even though negligently caused, amounted to a deprivation."  The Court in *Daniels*, *supra*, overruled *Parratt* to the extent that it held that mere lack of due care by a state official may deprive a person of life, liberty or property and held that "the due process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, *supra*.  Moreover, in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme Court stated:

> We hold that an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.

The plaintiff was not deprived of property without due process of law.  Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the state or its agents.  The defendant was an agent of the State of Alabama, therefore, plaintiff has a remedy under the state statute.  Should the Board of Adjustment deny the claim, plaintiff may then bring an action in the courts of the state of Alabama for redress.  See *Carmichael v. State Board of Adjustment*, 249 Ala. 542, 32 So.2d 216 (1947).  Therefore regardless of whether the alleged deprivation was unintentional or intentional, plaintiff has not been deprived of property without due process of law because he has a legal means whereby he can be heard on this claim for compensation.

Plaintiff also claims that as the law library supervisor and notary public, defendant Bailey's acts or lack of action has and continues to deny inmates in segregation access to the courts. He states that defendant Bailey issues only one civil complaint per inmate every six months, rushes in and out

of cellblocks, usually does not issue requested books, had no legally literate inmate on his inmate staff, and inmates serving as library personnel give wrong legal advice.

The Supreme Court has held that the due process clause of the Fourteenth Amendment assures inmates a right of meaningful access to the courts.  However, the right of access to the courts as defined in *Bounds v. Smith*, 430 U.S. 817 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court.  This can be accomplished by one of several alternatives, including the appointment of counsel, providing the assistance of other persons trained in the law, or providing access to a law library.  It must be emphasized that these are all *alternative* ways of guaranteeing a prisoner's right of access to the court; they are not cumulative of one another.  *See Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 2180 (1996); *Bounds v. Smith*, 430 U.S. at 830.  An inmate represented by an attorney, for example, does not also have the right to have access to a law library.  *See United States v. Smith*, 907 F.2d 42 (6th Cir. 1990); *United States ex rel. George v. Lane*, 718 F.2d 226 (7th Cir. 1983); *United States v. Wilson*, 690 F.2d 1267 (9th Cir. 1982).

Further, in *Lewis v. Casey*, the Supreme Court made it clear that, in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance program [or other alternative provided] hindered his efforts to pursue a legal claim."  518 U.S. at 350, 116 S.Ct. at 2180.  To establish such prejudice, an inmate "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had

suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id*.

In order to prevail on a claim under *Bounds* plaintiff must show actual injury, that is that prison officials actually impeded his pursuit of a non-frivolous post conviction claim or civil rights action. Plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. Mere allegations of denial of access to a law library are inadequate. *Sabors v. Delano*, 100 F. 3d 82, 84 (8th Cir. 1996).

In the present case, it is clear from plaintiff's complaint that, consistent with *Bounds v. Smith*, *supra*, which requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court, plaintiff was provided with two means by which he could bring his legal claims before the court. It is clear from plaintiff's complaint that plaintiff was provided with both access to the law library and with the assistance of inmate law clerks at the prison. It is clear from plaintiff's complaint that plaintiff could request that law books be brought to him. It is also clear that plaintiff could ask the inmate law clerks for assistance.

Alternatively, as previously noted, *Bounds* requires that a plaintiff must show actual injury. A plaintiff must show that prison officials actually impeded his pursuit of a non-frivolous post conviction claim or civil rights action. Plaintiff must allege some impediment, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. The plaintiff in this action has failed even to allege that he was prejudiced in any way in any case in any court by defendant Bailey's actions or inaction. Without such an averment of

prejudice, the plaintiff cannot establish a violation of his right of access to the courts. *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). Plaintiff's claim is due to be dismissed.


9. Claims Arising on February 16, 2000

Plaintiff claims further that on February 16, 2000, he was found guilty of violating Rule 38, prohibiting indecent exposure, by defendant Headley. Plaintiff states that, as part of the disciplinary finding, defendant Headley recommended a referral for psychological determination. Plaintiff contends that neither Administrative Regulation 403 nor the Classification Manual of the Alabama Department of Corrections lists such a referral. Plaintiff argues that defendant Headley is not qualified to make a psychological referral nor was it within the duties of his job description.

Plaintiff's claim that defendant Headley violated certain specific agency regulations by making a psychological referral is due to be dismissed. The mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).

Plaintiff claims further that he was not allowed to participate in the entire disciplinary hearing. He asserts that he was not given written notice of the charges prior to the hearing nor was he permitted to attend the hearing. In fact, he alleges that he did not learn of the disciplinary hearing until February 18, 2000, when he awoke to find a copy of the disciplinary finding on the floor in his cell. Plaintiff states that in addition to the psychological referral, defendant Headley recommended 45 days disciplinary segregation and 45 days loss of all privileges.

Plaintiff's claims regarding the disciplinary are due to be dismissed.  He asserts that his due process rights were violated, because (1) he did not receive written notice of the charges prior to the hearing and (2) he was not permitted to attend the hearing. As already explained, the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct.2293, 132 L. Ed. 2d 418(1995), changed the landscape in the analysis of this type of case.  With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*.  Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur.  As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment."  Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*.  Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

Plaintiff claims in this case that he was sentenced to 45 days in disciplinary segregation and 45 days loss of all privileges following a disciplinary hearing during which he was denied due process.  Plaintiff does not allege that he lost good-time credits already earned or accrued. While before *Sandin* plaintiff's assertion would have sufficiently stated a due process claim under § 1983, *see ,e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does so.  There is no right to due process before a prisoner is confined to segregation.

Therefore,   because there is no right to procedural due process of law before the imposition of disciplinary segregation, the fact that plaintiff was found guilty of violating Rule 38 even though he did not receive written notice prior to the hearing and he was not present at the hearing is not actionable under the Fourteenth Amendment or § 1983. Plaintiff's claim is due to be dismissed.

In connection with this and other disciplinary procedures, plaintiff asserts that on October 6, 1999, and February 16, 2000, defendant Dees approved the hearing officers' decisions of guilt and recommendations for punishment for disciplinaries STC -99-1967 and STC-00-0287.  He contends that the approvals were infringements upon the Eighth and Fourteenth Amendments because a review of the circumstances, evidence, and allegations of said rule violations would have resulted in disapprovals. Plaintiff argues that the violations occurred when defendant Dees allowed the "constitutional deprivations" of his subordinates to stand and approved them subjecting plaintiff to mental anguish and severe weight loss caused by having to serve time in disciplinary segregation. The court has already determined that plaintiff's constitutional rights were not violated when he was found guilty of the disciplinaries in question and sentenced to disciplinary segregation.  A prisoner has no right to procedural due process before he is confined to disciplinary segregation.  Therefore, plaintiff's complaint that  defendant Dees approved the findings and sentences given in connection with the disciplinaries also fails.  These claims are due to be dismissed.


10.  Claims Involving Sgt. Sanderson

Plaintiff next claims that on December 1, 1999 and in August, 1999, defendant Sanderson escorted him to the segregation officers break room and threatened to prolong his stay in segregation if plaintiff came back.  Plaintiff contends that considering defendant Sanderson's body language,

facial expressions, certain unrelated comments, and the timing of both encounters, they were in fact methods of intimidation and harassment in retaliation for an earlier lawsuit plaintiff filed against Sergeant Northcutt.  In the same paragraph on page ten of plaintiff's affidavit attached to his complaint, plaintiff states that "[he] expect retaliation in some form from at least one defendant of this suit especially in light of the 'non-existing' suit [he] filed against Northcutt."  It is clear that this claim is due to be dismissed.  As noted, it is well established that verbal harassment, words, and threats are not actionable as constitutional violations.  *Robertson v. Plano City of Texas,* 70 F.3d 21, 25 (5th Cir. 1995); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *cert. denied,* 502 U.S. 879 (1991); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998 (1983); *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979); *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1553 (N.D. Fla. 1995); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982).

Plaintiff's allegation that the threats were made in retaliation for a lawsuit he had previously filed does not save this claim.  Although plaintiff claims that the threats were made in retaliation for a lawsuit that he had filed against Sergeant Northcutt, plaintiff admits in the same paragraph that the lawsuit did not exist.  It is therefore impossible for defendant Sanderson to have retaliated against plaintiff for something that did not exist.  This claim is so incredible and fantastic that it is frivolous within the meaning of *Denton v. Hernandez*, 504 U.S. 25 (1992).  As the Supreme Court has stated:

> [A] court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless,"  [*Neitzke v. Williams*, 490 U.S. 319, 327 (1989)], a category encompassing allegations that are " fanciful, " *id*., at 325, "fantastic," *id*., at 328, and "delusional," *ibid*.  As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially

> noticeable facts available to contradict them.  An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely.

*Denton v. Hernandez*, 504 U.S. at 32-33.  This claim is so clearly baseless and wholly unbelievable that it should be dismissed as frivolous.

Even if such a lawsuit existed, there simply is no basis for linking the comments by Sgt. Sanderson with it.  Such an allegation of retaliation must be based upon some facts from which a reasonable fact-finder could conclude that the animus behind Sgt. Sanderson's statements was a desire to retaliate for the law suit against Sgt. Northcutt.  Other than sheer conjecture, there is no such fact plead.  Plaintiff's allegation that Sgt. Sanderson wanted reprisal is no more supported than if plaintiff had alleged such a motive against the warden, the commissioner, or virtually anyone else.

11.  Claims Arising on February 18, 2000

Plaintiff claims that on February 18, 2000, while he was being processed into disciplinary segregation, defendant Gladdins used racial slurs while talking with defendant Henderson in the plaintiff's presence.  Plaintiff states that he "address[ed] both" defendants Gladdins and Henderson and that defendant Henderson stated to him, "Shut up, boy."  Plaintiff states that he then recited the First Amendment, which angered defendants Gladdins and Henderson enough for them to surround him and point their fingers in his face while repeatedly shouting for him to "shut up."  Plaintiff states that he told defendants Gladdins and Henderson the following: "Im (sic) of the Mighty Mandingo bloodline, I know no fear."  Plaintiff alleges that this statement caused defendants Gladdins and Henderson to attack him.  He claims that defendant Gladdins pushed him against the wall and started poking him in the groin with his baton, while defendant Henderson choked him with both of his

hands and banged his head against the wall.  Plaintiff states that his hands were cuffed behind his back during this incident.  Plaintiff states that following the alleged assault, defendants Gladdins and Henderson "re-inventoried" his property and proceeded to throw into a garbage can a copy of the Quran, a leather religious medallion, several legal letters and briefs, and several photographs.

Insofar as plaintiff claims that defendant Gladdins used racial slurs while talking with defendant Henderson in plaintiff's presence and that defendants Gladdins and Henderson told him to shut up, these facts do not state a claim for which relief can be granted.  It is well established that verbal harassment, words, slurs, and threats are not actionable as constitutional violations. *Robertson v. Plano City of Texas,* 70 F.3d 21, 25 (5th Cir. 1995); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *cert. denied,* 502 U.S. 879 (1991); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998 (1983); *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979); *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1553 (N.D. Fla. 1995); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982). Thus, to the extent plaintiff intends these facts to allege a claim, it is frivolous and due to be dismissed.

Next, plaintiff alleges that defendants Gladdins and Henderson assaulted him when he recited the First Amendment to them and proclaimed his descent from a "Mighty Mandingo bloodline." Plaintiff states in his verified complaint that he "address[ed]" both defendants and that after he was told to shut up, he then recited the First Amendment to them. Plaintiff was again told to stop talking. Instead of remaining quiet, plaintiff told the defendants that he was of the mighty Mandingo

bloodline and that he knew no fear. Plaintiff states that it was at that point that he was assaulted by defendants Gladdins and Henderson while cuffed behind the back.

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 112 S. Ct. 995 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S. Ct. at 999. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that " `[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "

*Id*. at 998-9 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many

27

factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 999.

Applying the factors set forth in *Whitley* to the facts of this case, the court cannot say that plaintiff['s allegation of excessive force by Gladdins and Henderson is frivolous.  Although plaintiff admits in his complaint that he refused to follow defendants Gladdins' and Henderson's orders to keep quiet, there is no indication that he became violent or disruptive.  Instead recited the First Amendment and stated that he was not afraid.  As alleged in complaint, it also appears to the court that  the amount of force used in this instance surpassed what may have been necessary and amounted to force used "maliciously or sadistically" in violation of the Eighth Amendment.  But even if some level of force was necessary because Gladdins and Henderson were faced with an openly hostile and defiant inmate who posed a threat to institutional order, it was not necessary to choked and bang the plaintiff's head against the wall.  Plaintiff has sufficiently pled that the force used was both unnecessary and excessive.  Thus, this claim of unnecessary and excessive force survives the initial screening of the complaint mandated by § 1915A, and further proceedings will be necessary to resolve it.

Plaintiff's claim that defendants Gladdins and Henderson threw away certain property following the incident is also due to be dismissed. In *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court held that although the unintentional loss of a prisoner's personal property was a deprivation of property within the meaning of the Due Process Clause of the Fourteenth Amendment, the plaintiff was not deprived of property without due process where the State's postdeprivation tort remedy provided the process that was due.  In the companion cases of *Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986), the United

States Supreme Court reconsidered the holding in *Parratt*, *supra*, that "the alleged loss, even though negligently caused, amounted to a deprivation."  The Court in *Daniels*, *supra*, overruled *Parratt* to the extent that it held that mere lack of due care by a state official may deprive a person of life, liberty or property and held that "the due process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, *supra*.

> Moreover, in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme Court stated: We hold that an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.

The court concludes that the plaintiff was not deprived of property without due process of law.  Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the state or its agents.  The defendant was an agent of the State of Alabama, therefore, plaintiff has a remedy under the state statute.  Should the Board of Adjustment deny the claim, plaintiff may then bring an action in the courts of the state of Alabama for redress.  See *Carmichael v. State Board of Adjustment*, 249 Ala. 542, 32 So.2d 216 (1947).  Therefore regardless of whether the alleged deprivation was unintentional or intentional, plaintiff has not been deprived of property without due process of law because he has a legal means whereby he can be heard on this claim for compensation.

12. Claims Involving Officer McGant

Plaintiff next claims that on March 7, 2000, defendant McGant opened his legal mail outside of his presence and confiscated three ink pens. Plaintiff states that defendant McGant handed him the envelope, which had already been opened, and stated that there were pens in the envelope and he had to take them. He states that defendant McGant informed him that defendant Headley would place the pens in his property, but plaintiff was not issued a property form verifying such.

This claim is also due to be dismissed. Although plaintiff states that he did not receive a property form verifying that the pens were placed in his property, he does not contend that the pens were not in fact placed in storage with his other property. Plaintiff does not allege that upon his release from disciplinary segregation, he discovered that the pens in question were not in his property. Plaintiff simply complains that agency rules were not followed when defendant McGant failed to give him a property form and, as previously noted, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).

Further, the mere taking or destruction of legal materials does not, standing alone, constitute a violation of the plaintiff's right of access to the courts. In this case, plaintiff does not allege that legal materials were taken, he alleges only that three ink pens were taken from his legal mail. The courts recognize that although a prisoner's right of access to the courts is constitutionally guaranteed, that right is neither absolute nor unconditional. *Bounds v. Smith*, 430 U.S. 817 (1977). The taking of a prisoner's legal papers states a claim under § 1983 "if the taking results in the interference with or infringement of the prisoner's constitutional right of access to the courts." *Tyler v. Woodson*, 597

F.2d 643, 644 (8th Cir. 1979) *quoting*, *Tyler v. "Ron" Deputy Sheriff*, 574 F.2d 427, 429 (8th Cir. 1978).   However, a prisoner "has no cause of action under 42 U.S.C. § 1983 based upon his allegation of a single incident of destruction of his legal materials." *Gill v. Neaves*, 657 F.Supp. 1394 (W. D. Tex. 1987), *citing*, *Hudson v. Palmer*, 468 U.S. 517 (1984).  Plaintiff has alleged only a single incident involving the taking of ink pens from his legal mail. Accordingly, his claim of denial of access to the courts should be dismissed for failure to state a claim.

13.  <u>General Conditions of Confinement Claims</u>

Plaintiff next claims that defendants Dees and Garrett are primary and secondary administrators and are responsible for implementing the policy of replacing bed mattresses in segregation cells with three quarter inch thick rubber mats.  He argues that the mats are placed on concrete slabs that replace the iron beds which were once used.  He further complains that in K-Block, the water in the sink and shower is continuously and extremely cold, which means that few or no inmates take showers.  This, he contends, poses a risk for illnesses because a foul body odor lingers in the entire unit, and there have been outbreaks of lice.

In order to establish that jail conditions violate the Eighth Amendment, a plaintiff "must prove three elements:  (1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303], 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994).  Whether a particular condition of confinement constituted cruel

and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  *See Wilson v. Seiter*, 502 U.S. at 290.

Jail conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  While it is the duty of jail officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349.  As the Eleventh Circuit Court of Appeals observed in *Newman,* "the Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291.   "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988).

"[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."  *Rhodes v. Chapman*, 452 U.S. at 347.  Further, conditions must be assessed to determine whether they involve the deprivation of a basic human need.

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature at night combined with a failure to issue blankets.  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991) (*citations omitted*).

Plaintiff has failed to aver facts that he has suffered the serious deprivation of a basic human need with regard to his claim of being required to sleep on a rubber mat while in disciplinary segregation.  Although the Court of Appeals for the Eleventh Circuit has recognized that "sleep is an 'identifiable human need,'"*Jordan v. Doe*, 38 F. 3d at 1570, that court has also held that temporarily requiring prisoners "to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation," *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986).  In the instant case, plaintiff alleges that inmates in segregation are required to sleep on rubber mats.  Plaintiff does not claim that he was unable to actually sleep on the rubber mat so that he suffered sleep deprivation.  Plaintiff does not claim that he suffered any physical harm either while sleeping on the rubber mat.

Sleeping on a rubber mat may have been  an unpleasant experience for plaintiff.  However, it is clear that "[c]orrectional officials are not required to provide comfortable jails ... ."  *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998).  In this case, it simply cannot be said that plaintiff has alleged sufficient facts to establish that sleeping on a rubber mat constituted a serious deprivation of a basic human need.

In addition, plaintiff does not allege that there was any punitive intent on the part of the defendants.  He admits that all of the cells in K-Block have rubber mats, not just his cell. The court therefore concludes that plaintiff was not subjected to punishment in violation of his due process rights.  For the reasons stated above, this claim is due to be dismissed.

As noted, plaintiff claims further that the water in the sinks and showers in K-Block is continuously and extremely cold which means that few or no inmates take showers. Plaintiff claims that this poses a risk for illnesses because a foul body odor lingers in the entire unit. As an example

of the health problems in the segregation unit, plaintiff cites consecutive years in which there have been outbreaks of lice. As previously stated, the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349.  "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration."  559 F.2d at 291.  "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988). Having to use a sink and take showers in cold water may have been  an unpleasant experience for plaintiff, however, it simply cannot be said that plaintiff has alleged sufficient facts to establish that this constituted a serious deprivation of a basic human need.

With respect to plaintiff's claim that the foul body odors which linger in the unit can cause illnesses, this claim is due to be dismissed.  As an example, plaintiff claims that there have been outbreaks of lice in the cellblock for consecutive years.  Plaintiff does not allege that he has been made ill by foul body odors. While, it is most assuredly unpleasant to smell foul body odors caused by inmates who do not shower, it cannot be said that this constituted a serious deprivation of a basic human need.  Likewise, even though plaintiff does not allege that he contracted lice while housed in the cellblock, even if he had, that would not be enough to constitute a serious deprivation of a basic human need.

Plaintiff also claims that it is common practice for inmates who are being placed in administrative segregation to be housed in disciplinary segregation units. He claims that inmates subjected to this practice are deprived of the same privileges other administrative segregation status inmates who are actually housed in administrative segregation units receive. This claim is due to be dismissed. Plaintiff does not alleged that he has been classified as an administrative segregation

34

inmate. Therefore, he has no standing to raise this claim.    In order to satisfy the requirements of standing, a plaintiff must allege a personal injury fairly traceable to the challenged conduct and a likelihood of redress by the requested relief. *Sims v. State of Florida Dept. of Highway Safety & Motor Vehicles*, 862 F.2d 1449 (11th Cir. 1989); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982).

Plaintiff's next claim is that the disciplinary segregation rule that prohibits ink pens results in a denial of access to the courts. He states that when inmates' pencils are too short to write with, they have not other means to write. He states further that the rule violates the Equal Protection Clause of the Fourteenth Amendment because disciplinary segregation inmates housed in other Alabama Department of Corrections prisons are allowed to possess ink pens.

Both of these claims are due to be dismissed.  Clearly, inmates whose pencils are too short to write with can ask correctional officials for a new pencil.  In addition, in order to prevail on a claim of denial of access to the courts under *Bounds v. Smith*, 430 U.S. 817 (1977), plaintiff must show actual injury, that is that prison officials actually impeded his pursuit of a non-frivolous post conviction claim or civil rights action.  Plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.  Mere allegations of denial of access to a law library are inadequate.  *Sabors v. Delano*, 100 F. 3d 82, 84 (8th Cir. 1996).  Plaintiff has failed to allege facts to demonstrate that he was prejudiced in any way in any case in any court because his pencil was too short to write. Without such a showing of prejudice, the plaintiff cannot establish a violation of his right of access to the courts.  *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). Plaintiff's claim is due to be dismissed.

Further, plaintiff's generalized claim of prejudice, or discrimination, does not state a claim in violation of the equal protection clause of the Constitution. In *Oyler v. Boles*, 368 U.S. 448, 456 (1962), the United States Supreme Court indicated that to show a constitutional violation there must be a showing of selection deliberately "based upon an unjustifiable standard such as race, religion or other arbitrary classification." The mere allegation that disciplinary segregation inmates housed in other Alabama Department of Corrections prisons are allowed to posses ink pens does not show any deliberate action against plaintiff by defendants based upon an unjustifiable standard.

Plaintiff claims that there is an ongoing unwritten policy which prohibits segregation inmates' possession of legal documents that are dated past six months from the date of processing and which restricts the amount of legal documents an inmate can possess. He contends that these rules are not in the disciplinary segregation rules which are displayed on the wall of the processing room.

Plaintiff's claim is due to be dismissed for at least two reasons. First, plaintiff fails to state how these unwritten policies have violated his constitutional rights. The claim is due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). In addition, plaintiff alleges that the rules on the processing room wall were violated by the unwritten policies; however, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).

36

Plaintiff next claims that his religious rights have been infringed upon, blatantly denied, and equally disrespected by the institutional mail clerk. He states that mere pieces of paper have been returned to the sender and that occasionally his religious newspaper is returned. This claim is due to be dismissed. Plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). He does not name the mail clerk who allegedly returned the items, nor does he state the dates on which the items were allegedly returned, nor does he describe clearly the nature of the items returned. Without such facts, it cannot be determined whether any First Amendment right was even implicated, much less violated.

Plaintiff's final claim is that the Department of Corrections has a regulation for name changes that requires inmates to use dual names, but the rule had not been adhered to by the administration at St. Clair Correctional Facility until after plaintiff requested that his legal name be added to the institutional roster. Plaintiff states that his legal name was added to the institutional roster when defendant Thompson requested that it be done. Plaintiff states that before he made his request, he was able to use either name for his outgoing mail, but two days after he made his request, his mail that was addressed in his legal name was returned. He contends that his legal name does not appear on either his segregation card or the segregation roster. He claims that he sent defendant Thompson a copy of the court order regarding his name change, but defendant Thompson has not returned it nor has he followed departmental regulation. Plaintiff alleges that the actions of defendant Thompson and unnamed administrators of the St. Clair Correctional Facility violated certain a specific agency regulations; however, the mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d

37

1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838

(E.D. Va. 1981).  Further, the court finds it pertinent to note that mail sent to plaintiff from this court

in connection with this case bears his legal name "Your Lord My Majesty Allah" and has not been

returned to the court as undeliverable.


<u>CONCLUSION</u>

Accordingly, for the reasons stated above, the court finds that all but one of plaintiff's claims

are frivolous or fail to state a claim for relief.  Pursuant to the authority of the PLRA, 28 U.S.C.

§ 1915A(b)(1), the court will enter an order dismissing all of plaintiff's claims, except his claim of

excessive force against Officers Gladdins and Henderson, which claim is hereby referred to the

magistrate judge for further proceedings and prompt resolution. .

The Clerk is DIRECTED to serve a copy of this memorandum opinion upon the plaintiff.

DATED this 27th  day of September, 2005.


**VIRGINIA EMERSON HOPKINS**
United States District Judge

38