FILED
2006 Aug-31 PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **YOUR LORD MY MAJESTY ALLAH** ) <br> also known as **ALVIN PIERRE PHILLIPS,** ) <br> ) <br> **Plaintiff,** ) <br> vs. ) <br> ) <br> **OFFICER GLADDINS and** ) <br> **OFFICER HENDERSON,** ) <br> ) <br> **Defendants.** ) | Case No. 2:00-cv-697-VEH-TMP |

## MEMORANDUM OPINION

This cause is again before the court on the defendants' amended motion for summary judgment, filed April 21, 2006.[1]  Although the court has previously denied a similar motion for summary judgment by the defendants, this motion brings the court a renewed focus on the defendants' argument that plaintiff's claim involves, at best, only a *de minimis* use of force, not actionable under the Eighth Amendment.

---

[1] Although the motion was filed on April 21, 2006, there were problems serving the plaintiff with a copy. When the court notified the parties of the schedule for briefing the motion, plaintiff complained that he had not been served with the motion. The court directed the defendants to re-serve the plaintiff. When that direction was overlooked, the court ordered the defendants to show cause why they should not be sanctioned, and on June 26, 2006, the defendants responded to the show cause order, certifying that they had re-served the plaintiff with the motion for summary judgment. Again, a magistrate judge of this court notified the parties on June 30, 2006, that the motion would be taken under submission. Unfortunately, that notice was mailed by the clerk's office to the wrong penal institution, and plaintiff never received it. Finally, on August 2, 2006, the notice of submission was mailed to plaintiff at the correct penal institution, notifying him that he had 20 days from that date, August 2, to file any response to the motion for summary judgment. To date nothing has been filed by plaintiff in response.

The court will not reiterate the standards used for analyzing summary judgment motions, which were discussed extensively in the court's memorandum opinion of March 28, 2006. Nonetheless, applying those standards to the evidence, the following facts are undisputed or taken in a light most favorable to the plaintiff.[2] On February 18, 2000, plaintiff was being processed into the disciplinary segregation unit following his conviction for a disciplinary infraction. Defendant Gladdins was handling the processing, which requires an inventory of the prisoner's belongings, which he is not allowed to have in segregation and which are stored for him while he is in segregation. During this process, plaintiff states that defendant Gladdins began using racial slurs, to which plaintiff responded with some remark that caused defendant Henderson to say, "Shut up, boy." When plaintiff continued to talk, reciting to the officers the First Amendment to the Constitution, they became angry, surrounded him, and were pointing their fingers in his face, while yelling, "Shut up." To this plaintiff stated, "I'm of the Mighty Mandingo bloodline, I know no fear." Defendant Gladdin then pushed plaintiff, who was handcuffed, against the wall and poked the

---

[2] Plaintiff's entire description of the incident, and the only evidence he has offered on it, is found in the affidavit he annexed to his original complaint. There, he stated the following:

> On 2-18-2000 while being processed into disciplinary segregation COI Gladdins began using racial slurs while talking to COI Henderson. After addressing both Henderson told me, "Shut up, boy." At this time I recited the First Amendment which angered both to the point of them surrounding me and pointing their fingers in my face while repeatedly shouting, "Shut up." I then told them, "Im of the Mighty Mandingo bloodline, I know no fear." This caused them to attack me — Gladdins pushed me against the wall and started poking me in the groin with his baton as Henderson choked me with both of his hands simultaneously banging my head against the wall. At all times during this attack I was handcuffed with my hands behind my back.

[All punctuation and spelling as in original].

plaintiff in the groin with his baton. At the same time, Officer Henderson grabbed plaintiff around the neck with both hands and "bang[ed]" his head against the wall.

There is no further description of how long this incident continued, and the segregation logs maintained for that day do not report any incident out of the ordinary. Plaintiff has not disputed the defendants' assertion that he suffered no injury and required no medical treatment as a result of the incident. Again, the segregation logs do not report that plaintiff sought or required any medical attention that day, or otherwise sought to report the incident or complain about it.

In its earlier memorandum opinion, the court explained the Whitley v. Albers 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), standards applicable to prisoner claims of excessive force under the Eighth Amendment. The ultimate test is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). This test is broken into five factors that point to whether the force applied was legitimate: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and, 5) the extent of the injury suffered by the inmate. The Hudson court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 999. Consideration of these factors always takes place against the backdrop of "wide-ranging deference" being accorded to prison officials' decisions with respect to the need for force to maintain order and discipline.

Although the court previously wrote that "[n]o reasonable corrections officer could believe that, in response to plaintiff's invocation [of] the First Amendment and his Mandingo heritage, it was lawful to choke him and strike his head against the wall, the court now has had the chance to consider more carefully the fifth factor in the Hudson test — the extent of injury suffered by the prisoner. Defendants now emphasize for the first time that the force used was *de minimis*, as reflected by the lack of injury suffered by the plaintiff. Having now more carefully considered the Hudson factors, and compared the facts of this case to other excessive force cases, the court agrees that plaintiff is complaining about a *de minimis* use of force that does not rise to the level of a constitutional violation.

Looking to the Hudson factors, the evidence suggests that some use of force was necessary to compel the plaintiff to comply with the officers' commands that he remain quiet. Giving the officers the deference to which they are entitled, the court will not second-guess whether there was a legitimate need for the plaintiff to be silenced. Given that plaintiff was being processed into disciplinary segregation, the officers had a legitimate concern about both the plaintiff's cooperation and the hostile atmosphere created by the inmates in the segregation unit itself. Segregation units are notoriously volatile, and only the slightest provocation is needed to set off a disturbance. For this reason, the officers processing plaintiff into the unit may reasonably have felt it necessary to control a loud, recalcitrant inmate in order to prevent a disturbance.

The force was used for the purpose of silencing the plaintiff and ending his defiance. Thus, there was a link between the need for force and the force used.

The force used was restrained. While plaintiff was "poked" in the groin with a baton and choked, he was not beaten or kicked, and no weapons or chemical agents were used on him. The degree of force used related to the need to silence the plaintiff.

Finally, and most important to this analysis, is the lack of injury suffered by the plaintiff. There is absolutely no evidence that plaintiff suffered any injury or sought any medical attention. Not only do the segregation logs for that day fail to mention any medical attention being needed or sought by plaintiff, his own affidavit says nothing about suffering an injury or seeking medical attention.

Several cases help to illuminate the *de minimis* nature of the force in this case. For example in Harris v. Chapman, 97 F.3d 499 (11th Cir. 1996), the court of appeals described the following facts as creating a "very close case" for a *de minimis* use of force:

> The evidence before the jury included Harris's claims that the officers as a group (including Cotterman) kicked and beat him, and that Cotterman specifically snapped his head back with a towel, "mugged" or slapped him twice in the face, and harassed him with several racial epithets and other taunts. Harris claimed that some of these actions, particularly the kicking and use of the towel, caused or exacerbated the injuries to his back. Testimony supported both the allegations and the fact of his existing physical condition to some extent. His allegations were thus not merely conclusory, see Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir.1990), cert. denied, 498 U.S. 1103, 111 S. Ct. 1003, 112 L. Ed. 2d 1085 (1991) (pre-Hudson ), and the jury chose to believe them at least in part. *This is a very close case*, but we find that in these particular circumstances, viewing the evidence in the light most favorable to Harris, as we must, these claims together constitute more than a "*de minimis*" injury.

Id. at 505-506 (first italics added for emphasis); see also Skrtich v. Thornton, 280 F.3d 1295 (11th Cir. 2002) (finding that broken bones requiring hospitalization involved more than *de minimis* force).

5

By comparison, several cases alleging Fourth Amendment excessive force used to make arrests have held that the force was not sufficiently serious to be considered more than *de minimis*.[3] In Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000), the court of appeals found that the following use of force involved only *de minimis* force:

> [Plaintiff] claims [defendant] grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him. [Plaintiff] maintains he suffered bruising to his forehead, chest, and wrists, although he admits the bruises disappeared quickly and he did not seek medical treatment.

Id. at 1255. In Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified 14 F.3d 583 (11th Cir. 1994), the court concluded that placing an arrestee in a "chokehold" and pushing him against a wall was not excessive, even if unnecessary because the arrestee was not resisting. Also, citing to the case of Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997), the Nolin court wrote:

> [I]n Jones, the officer "slammed" the plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants." 121 F.3d at 1460. This led the plaintiff to experience "pain from having to lift his

---

[3] Reference to the concept of *de minimis* force in the Fourth Amendment context is helpful for setting the upper limits of what might be considered *de minimis* force in the Eighth Amendment case. If anything, the deference accorded prison guards is even greater than that given to arresting policemen because of the institutional concerns for violence that come naturally from the institutional setting itself. If anything, prison guards may engage in greater degrees of force, while still being *de minimis*, than an arresting officer because prison guards are faced with large numbers of potentially dangerous inmates locked together. Prison guards have a greater need to maintain order and discipline in an institution filled with recalcitrant and intractable inmates than an officer may have while arresting an individual on the streets. The different standards of analysis for Eighth Amendment (malicious and sadistic use of force) and Fourth Amendment (objectively unreasonable use of force) claims confirms this. Compare Whitley v Albers 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), with Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

> arms since he had previously suffered a stroke," and "pain in his arthritic knee from having his legs kicked apart." Id.  In addition, the plaintiff later received minor medical treatment for the pain in his knee.  Nevertheless, the Jones Court determined, relying on Post, that qualified immunity shielded the officers because while "the use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature.  Given such variables, the application of the excessive force standard would not inevitably lead an official in [the defendant officers'] position to conclude that the force was unlawful."

Nolin v. Isbell, 207 F.3d 1253, 1256-1257 (11th Cir. 2000).

Although Fourth Amendment cases, their facts are instructive on the issue of what level of force might be considered *de minimis* and what exceeds that level.  Looking to the facts of the instant case, the court can easily say that the level and type of force used by these officers was more comparable to that in Nolin and Post than that in Harris and Skrtich.  Although plaintiff was pushed against a wall, "poked" with a baton, choked, and had his head "banged" against the wall, he suffered no injury.  The actions taken here were like those found to be *de minimis* in Nolin (pushed against a van, kneed in the back, and groin searched "uncomfortably"), Post (choke-hold), and Jones (being "slammed" against a wall and legs "kicked" apart).  For this reason, the court finds that the force used against plaintiff in this case was constitutionally *de minimis*.

In summary, looking at the five Hudson factors, the court agrees that defendants are entitled to judgment as a matter of law.  Being faced with a defiant inmate in the disciplinary segregation unit, officers attempted to silence him with the use of force before his verbal defiance precipitated a greater disturbance among the segregation-unit inmates.  The level of force, even if perhaps unnecessary, was not so great as to cause injury to the plaintiff and was not the type of force that "shocks the conscience."  Balancing all five Hudson factors, including importantly the "extent of injury" factor, the court cannot say that the facts here, if believed by a jury, would entitle plaintiff

to recover.  The force used was simply *de minimis*.  It was the type of force which, in the peace of a judge's chamber, might seem unnecessary, see Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973) quoted in Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), but it was not so excessive as to offend the Eighth Amendment.

    The defendants will be granted summary judgment by separate order.

    The Clerk is **DIRECTED** to mail of copy of the foregoing to plaintiff at his last address at Holman Correctional Facility.

    **DONE** this the 31st day of August, 2006.

    **VIRGINIA EMERSON HOPKINS**
United States District Judge